Filed 12/20/22  In re R.P CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| In re R.P. et al., Persons Coming Under the Juvenile Court Law. | B318975 (Los Angeles County Super. Ct. No. 18LJJP00024) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>KIMBERLY S.,<br><br>Defendant and Appellant. | |

APPEAL from an order terminating parental rights of the Superior Court of Los Angeles County, Donald A. Buddle, Jr., Judge.  Conditionally affirmed.

Megan Turkat Schirn, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn Harrison, Acting County Counsel, Kim Nemoy, Assistant County Counsel, and Melania Vartanian, Deputy County Counsel, for Plaintiff and Respondent.

_____

In these dependency proceedings, mother, Kimberly S., appeals from the order terminating her parental rights. Mother argues we must remand this matter to the juvenile court for additional proceedings consistent with the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.; ICWA) and related California law. We agree. We conditionally affirm the order terminating parental rights and remand for the Los Angeles County Department of Children and Family Services (DCFS) to conduct an inquiry of maternal relatives as to the children's potential Indian ancestry.

## BACKGROUND

We summarize only those facts pertinent to the limited scope of this appeal.

1. ***The juvenile court assumed jurisdiction over mother's and father's children; mother and father fail to reunify; and the juvenile court terminated mother's and father's parental rights***

Mother and father, who are not married, were involved in a prior dependency proceeding because of their domestic violence.

2

The current proceeding commenced in May 2020 when DCFS filed a Welfare and Institutions Code[1] section 300 petition requesting jurisdiction over mother's three children S.A., R.P., and L.P. This appeal concerns only R.P. (born in 2014) and L.P. (born in 2019). L.P. and R.P. (sometimes referred to collectively as the children) were detained and placed with maternal great aunt (sometimes referred to in the record and by mother as maternal aunt) Y.S., where they remained throughout the dependency proceedings. Y.S. and her husband, Mr. C., ultimately became the children's prospective adoptive parents.

As later sustained, the petition alleged with respect to mother that she and father had a history of engaging in violent altercations in the presence of the children. Mother failed to protect the children from father's substance abuse including methamphetamine. In violation of a court order, mother allowed father unmonitored contact with the children. Mother has a history of engaging in assaultive behavior including bruising paternal grandmother's face. Mother left the children unattended for long periods of time. Mother abused alcohol. The children have a prior dependency history because of mother's and father's domestic violence.

The court sustained additional allegations with respect to father, whose appeal has been dismissed pursuant to *In re Phoenix H.* (2009) 47 Cal.4th 835, 838.)

Mother and father did not comply with court ordered services and did not reunify with the children. The juvenile court found: "Parents failed to regularly participate in visitation and

_____

[1] Undesignated statutory citations are to the Welfare and Institutions Code.

3

did not make efforts to mitigate the safety concerns that brought their family to the attention of the Department."  The juvenile court terminated mother's and father's reunification services in February 2021.

In February 2022, the juvenile court terminated mother's and father's parental rights over R.P. and L.P.  Mother timely appealed from the order terminating her parental rights.

**2.      *The juvenile court finds that R.P. and L.P. are not Indian children as defined by ICWA***

In May 2020, mother lived with the children, father, paternal grandmother, and paternal grandfather.  When interviewed by a social worker, mother reported that maternal grandmother abandoned her when she was an infant.  Mother reconnected with maternal grandmother when she was 17 years old and mother "beat her [maternal grandmother] up."  Mother reported that maternal grandfather and paternal grandmother raised her.  Mother reported that maternal grandfather lived in Las Vegas.  DCFS reported that maternal grandmother visited the children with mother once during the dependency proceedings.

In May 2020, a social worker indicated she inquired into whether R.P. and L.P. were Indian children and stated that they had no known Indian ancestry.  The form does not indicate to whom the social worker spoke.

On May 12, 2020, in the current dependency proceeding, father filed a parental notification of Indian status indicating that he had no Indian ancestry as far as he knew.  Also on May 12, 2020, in the current dependency proceeding, mother filed a form stating that the children were not members or eligible for

membership in any tribe. In 2018, in connection with the prior dependency proceeding, mother filed the same form and also indicated the children were not members or eligible for membership in an Indian tribe.[2]

On May 12, 2020, the court found that it had no reason to know L.P. and R.P. were Indian Children as defined under ICWA and ordered mother and father to keep their attorneys and the court aware of any new information related to ICWA status. Paternal grandfather later denied having any Indian ancestry. Mother also subsequently denied having American Indian heritage.

## DISCUSSION

"At the outset of a dependency case, the child welfare agency and the juvenile court have a statutory initial duty to inquire into whether a child is, or may be, an Indian child. 'The child welfare department's initial duty of inquiry includes "asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled." [Citation.]' [Citation.]" (*In re Darian R.* (2022) 75 Cal.App.5th 502, 507 (*Darian R.*), fn. & italics omitted.) Under ICWA, the term " 'extended family member' " is "defined by the law or custom of the Indian child's tribe or, in the absence of such law or custom, shall be a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or

_____

[2] This court previously granted judicial notice of the 2018 form. It was not before the juvenile court.

sister-in-law, niece or nephew, first or second cousin, or stepparent."  (25 U.S.C. § 1903(2).)

On appeal, it is not disputed that DCFS failed to discharge its duty of inquiry under ICWA because "the record does not indicate the social worker interviewed mother's maternal extended family members about possible Native American ancestry."  Mother argues this failure was prejudicial because "[t]here can be no assumptions as to what mother's maternal family members would have said since they were not asked."  Mother further argues that she may not know of her maternal family's ancestry because she was abandoned by her mother as an infant.  Respondent contends mother suffered no prejudice from the failure to inquire as to the children's potential Indian ancestry through mother's maternal relatives.

Appellate courts disagree about the appropriate standard for assessing prejudice in the context of a department's failure to conduct its initial inquiry into whether a dependent child is potentially an Indian child.  (*In re S.H.* (2022) 82 Cal.App.5th 166, 175–176 [describing five different tests for assessing prejudice].)  This division consistently has looked to whether " 'the record indicates that there was readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child.' "  (*In re S.S.* (2022) 75 Cal.App.5th 575, 582, quoting *In re Benjamin M.* (2021) 70 Cal.App.5th 735, 744; see also *Darian R., supra*, 75 Cal.App.5th at p. 509 [applying test for prejudice from *Benjamin M.*]; *In re A.C.* (2022) 75 Cal.App.5th 1009, 1017 (A.C.) [assessing whether there was "readily obtainable information that was likely to bear meaningfully on whether A.C. was an Indian child"].)

6

In *Darian R.*, we rejected the mother's claim that failure to interview her sister and father, with whom she had lived during part of the dependency proceedings, was prejudicial where both parents denied Indian ancestry, mother was under a court order to provide information relevant to ICWA, there was no evidence mother was estranged from her family, and a prior court order in an earlier dependency case involving the same biologic parents found ICWA inapplicable. (*Darian R.*, *supra*, 75 Cal.App.5th at p. 510.) Under these circumstances, we concluded, "The record simply does not support mother's unvarnished contention that additional interviews of mother's father and sister would have meaningfully elucidated the children's Indian ancestry." (*Ibid.*)

In *A.C.*, in contrast, a majority of this court held a failure to interview extended family members was prejudicial because, although both parents had signed ICWA forms indicating neither had Indian ancestry, "mother was the product of foster care and thus may not have known her cultural heritage." (*Supra*, 75 Cal.App.5th at pp. 1015–1016.) Also, the detention report indicated the child might be an Indian child. (*Id.* at p. 1016.) The majority "[could not] conclude from this equivocal record that DCFS's failure to conduct *any* inquiry as to mother and father's extended family members was not prejudicial." (*Ibid.*)

We conclude this case is closer to *A.C.* than *Darian R.* It appears that, as in *A.C.*, the juvenile court relied exclusively on mother's and father's forms when the court concluded that the children were not Indian children. Although mother had contact with maternal grandmother and maternal great aunt, she did not live with them during the proceedings and the extent of her

7

contact is not clear from the record.[3]  Because the juvenile court relied exclusively on mother's and father's forms, and because the record contains no affirmative indication that remand for further inquiry would not be meaningful, we conclude DCFS's failure to inquire of maternal relatives whether the children have any potential Indian heritage was prejudicial.

---

[3] In the current dependency proceeding mother indicated she had no contact with maternal grandmother except when she beat up maternal grandmother.  DCFS reported that maternal grandmother attended one of mother's visits.  In the prior dependency proceeding, mother reported she had a good relationship with maternal grandmother who "was always" in her life.

## DISPOSITION

The order terminating parental rights is conditionally affirmed.  We remand to the juvenile court for DCFS to comply with the inquiry and notice provisions of ICWA and California law consistent with this opinion.  If the juvenile court finds that the children are Indian children, it shall conduct further proceedings in compliance with ICWA and related California law.  If not, the juvenile court's original order terminating parental rights will remain in effect.

NOT TO BE PUBLISHED.


BENDIX, J.


We concur:



ROTHSCHILD, P. J.



CHANEY, J.

9